UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SANDRA KURTZ, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CASE No. 3:06-1209 |
| DEPARTMENT OF THE ARMY, | ) |
| PETE GEREN, SECRETARY OF | ) |
| THE ARMY | ) |
|     Defendants. | ) |

**TO: The Honorable Judge John T. Nixon**

### REPORT AND RECOMMENDATION

## I. INTRODUCTION

Presently pending before the Magistrate Judge is Defendant's motion for summary judgment. (DE 59) The Magistrate Judge has considered the Defendant's memorandum in support of Defendant's motion for summary judgment (DE 60), the Plaintiff's memorandum in support of Defendant's motion (DE 72), Defendant's reply brief in support of Defendant's motion for summary judgment (DE 78), other relevant documents that have been filed, and the oral argument.

For the reasons stated below, the Magistrate Judge **recommends** that the Defendant's motion for summary judgment (DE 59) be **granted** and that this case be dismissed with prejudice.

## II. BACKGROUND

Plaintiff, Sandra Kurtz, worked for the Defendant as a technician at the Eye Clinic, Blanchfield Army Community Hospital, which is located at Fort Campbell, Kentucky. ( DE 74 ¶ 1). Plaintiff's immediate supervisor, second line supervisor, and third line supervisor were Ricarda Johnson, Dr. Glenn Sanford, and Dr. (COL) Stanley Bloustine, respectively. ( DE 74 ¶ 3).

On March 26, 2004 an angry husband of another employee came into the clinic because his wife was allegedly having an affair with someone in the clinic. (DE 74 ¶¶ 4-5).

On March 29, 2004, Dr. Sanford, had a meeting with the clinic technicians about the incident with the husband, and told them that they should not gossip and that all of them would get a letter of reprimand in their files. (DE 74 ¶¶ 9-10).

On April 2, 2004, after being told by Ms. Johnson that Dr. Sanford would not speak with Plaintiff about the letter, Plaintiff and Ms. Smith made an appointment and met with COL Bloustine. ( DE 74 ¶¶ 13-15). Plaintiff stated that at the meeting she complained to COL Bloustine that it was unfair to get a letter in her file when she had done nothing to deserve it. (DE 74 ¶ 17).

On April 3, 2004, Ms. Johnson then notified Plaintiff and Ms. Smith that Dr. Nixon did not want them assisting Dr. Nixon with cataract and LASIK surgeries. (DE 74 ¶ 19; DE 79 ¶ 28). Dr. Nixon said this was because he did not trust the Plaintiff. (DE 74 ¶ 21) On April 7, 2004, Dr. Nixon informed a patient that Ms. Smith and Plaintiff were incompetent. (DE 79 ¶ 36).

On May 5, 2004, the Plaintiff went with Ms. Smith to the EEO office at Fort Campbell and provided a statement in support of Ms. Smith (DE 74 ¶¶ 31-32).

Sometime during the spring or summer of 2004, Plaintiff was reprimanded by Ms. Johnson for using an emergency door. (DE 74 ¶ 36). Ms. Johnson grabbed Plaintiff by the arm

and took her to the emergency door to read the sign that said emergency use only. (DE 74 ¶ 37).
The emergency door was used by clinic staff for going to and from the building (DE 79 ¶ 46).
Mr. O'Brien had been with Plaintiff during the emergency door incident, yet Ms. Johnson said nothing to Mr. O'Brien. (DE 79 ¶¶ 47,51).

Sometime after May 2004, Ms. Johnson took Plaintiff's purse, which the Plaintiff had left unsecured, while Plaintiff was in the instrument room. (DE 72, p.7). Ms. Johnson first told Plaintiff that she didn't have the purse, but then said, "so what if I do." ( DE 74 ¶ 57). Ms. Johnson had taken the purse to teach her a lesson about securing her property. (DE 79 ¶ 65). Ms. Johnson yelled at Plaintiff that her purse was supposed to be locked up. (DE 79 ¶ 61). She then took Plaintiff's purse out of a filing cabinet and gave it to her. (DE 74 ¶ 60).

On March 16, 2005, Plaintiff and another employee, Ms. Jouberg, took a recycling bin to be dumped. (DE 74 ¶ 43). Plaintiff and Ms. Jouberg left the recycling bin in the hallway and stopped at the same day surgery center so Ms. Jouberg could check to see when her son should be there the following day. (DE 74 ¶ 45). When they returned to the hallway, the bin was gone. (DE 74 ¶ 47). They searched for the bin and had an intercom announcement made stating that the bin was missing and should be returned. (DE 74 ¶ 48). Later, Ms. Johnson asked them about the bin. (DE 74 ¶ 51). She had taken the bin and wanted to see if they would report the bin was missing. (DE 74 ¶¶ 49- 50).

Plaintiff alleges that when Dr. Nixon received notice that Plaintiff was going to be a witness in Ms. Smith's EEO charge, Dr. Nixon told Plaintiff that he wanted to meet with her and then Dr. Nixon told her that "the only people I see that it (the notice) could hurt would be you and Dr. Sanford . . . " (DE 73 ¶¶ 68-72).

On May 3 2005, Plaintiff testified as a witness at the hearing on Ms. Smith's EEO

complaint. (DE 74 ¶ 53).

On May 9, 2005, Plaintiff contacted an EEO Counselor about her claim of retaliation. (DE 74 ¶ 54).

On May 20, 2005, Plaintiff was placed on a ninety day probation for entering incorrect information in a patient's records. (DE 73 ¶ 76). The error could have caused an incorrect prescription to be used in a procedure to correct the patient's vision. The doctor caught the error before the procedure began. (DE 78, p. 14-15).

Plaintiff also alleges that following the administrative hearing, which occurred on March 9, 2006, that Ms. Johnson altered a commendation form to exclude the Plaintiff's name and added names of other technicians. (DE 73 ¶¶ 96-97).

On September 26, 2006, the Department of the Army issued their decision dismissing Plaintiff's claim. (DE 72-3).

On December 21, 2006, the Plaintiff filed this action. In the original and amended complaint, the Plaintiff alleged that the Defendant violated Title VII of Civil Rights Act of 1964, 42 U.S.C. § 2000(e) by retaliating against the Plaintiff in the following ways:

(1) not allowing her to assist in surgeries;

(2) singling her out as to her use of an emergency door;

(3) her supervisor physically grabbing her;

(4) the supervisor hiding her personal possessions;

(5) the supervisor hiding a dumpster over which the Plaintiff had responsibility.

(DE 1; DE 34).

## III. LEGAL DISCUSSION

### A. Standard of Review

Summary judgment should be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails "to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B. Defendant's Motion for Summary Judgment

Defendant's motion for summary judgment should be granted because the Plaintiff's claims are untimely and because Plaintiff fails to make out a *prima facie* case of retaliation.

**1. Plaintiff's claims are untimely.**

"Aggrieved persons who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age or handicap must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a) "An aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). "A district court may dismiss a case where a plaintiff has failed to comply with this requirement." *Dixon v. Gonzales*, 481 F.3d 324, 330 (6th Cir. 2007)

All of the acts of retaliation alleged in Plaintiff's complaint occurred more than 45 days

before Plaintiff contacted an EEO Counselor about her claim of retaliation on May 9, 2005. (DE 74 ¶ 54).[1] Furthermore, at the administrative level, the Department of the Army noted in their final decision that, "except for the Memorandum of Formal Counseling, none of your client's dissatisfactions were raised with the EEO counselor within the required 45 days." (DE 72-3, p. 3)

"Because the forty-five day limitations period is a prerequisite to filing suit and not a jurisdictional requirement, it is subject to equitable tolling, waiver, and estoppel." *Dixon*, 481 F.3d at 330. The following five factors are used to determine if tolling should be allowed:

(1) lack of notice of the filing requirement;

(2) lack of constructive knowledge of the filing requirement;

(3) diligence in pursuing one's rights;

(4) absence of prejudice to the defendant; and

(5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement.

*Id.* at 331. "Equitable tolling should be invoked only in rare cases where the facts illustrate that the plaintiff's case is compelling." *Leeds v. Potter*, 249 Fed. Appx. 442, 447 (6th Cir. 2007). Usually, equitable tolling is appropriate only if the plaintiff's failure to meet the time requirement was because of circumstances beyond the plaintiff's control. *Id.*

Plaintiff argues that she did not have notice of the 45 day requirement and that she was afraid of retaliation. (DE 72, p. 17) However, as the Defendant points out, Plaintiff had

---

[1] The Plaintiff has not given an exact date of the purse incident, but stated that it occurred "sometime after May 2004". (DE 72, p.7). Consequently, it is assumed the date of the purse incident occurred more than 45 days before May 9, 2005.

constructive notice of the requirement as there were posters with the requirements throughout the facility where Plaintiff works. (DE 78, p. 4; DE 80). Furthermore, Plaintiff's claim that she was too scared to contact a Counselor does not warrant a compelling enough circumstance to toll the forty five day time requirement. Plaintiff was fully able to contact a Counselor within the 45 day time limit, and Plaintiff failed to do so. Consequently, Plaintiff's claims are untimely and should be dismissed.

In Plaintiff's memorandum in opposition to Defendant's motion for summary judgment, Plaintiff alleges two new claims of retaliation that would not be untimely. Plaintiff alleges that she was retaliated against on May 20, 2005 when placed on probation and after March 9, 2006, when Ms. Johnson excluded the Plaintiff's name from a commendation form and added names of other technicians. (DE 72, p. 9,11). Both of these claims occurred before the Plaintiff filed suit on December 21, 2006, yet Plaintiff did not list these alleged incidents of retaliation in her complaint or amended complaint. (DE 1; DE 34). "Once a case has progressed to the summary judgment stage, the liberal pleading standards are inapplicable." *Tucker v. Union of Needletrades, Indus., & Textile Employees,* 407 F.3d 784, 788 (6th Cir. 2005). Consequently, these claims should not be considered.

**2. Plaintiff fails to establish a *prima facie* case of retaliation.**

42 U.S.C.S. § 2000e-3 states:

> It will be unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this title [ 42 USCS §§ 2000e-2000e-17], or because he has made a charge, testified, assisted or participated in any manner in an

investigation, proceeding, or hearing under this title [42 USCS §§ 2000e-2000e-17].

In order to make out a *prima facie* case of retaliation, a plaintiff must show:

> (1) that she engaged in activity protected by Title VII: (2) that the defendant knew of this exercise of her protected rights; (3) that the defendant consequently took an employment action adverse to plaintiff, and (4) that there is a casual connection between the protected activity and the adverse employment action.

*Strouss v. Mich. Dep't. Of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001).

Plaintiff can not satisfy the first element of a *prima facie* case of retaliation. Plaintiff states that the retaliation she suffered was because she went outside the chain of command to speak with COL Bloustine. (DE 60-2 ¶ 35; DE 60-4, p. 23, lines 4-9 ). However, meeting with COL Bloustine was not a protected activity under the opposition clause. Plaintiff was not opposing an employment practice made an unlawful employment practice under Title VII. Title VII makes it unlawful for an employer to discriminate against employees because of race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. In Plaintiff's meeting with COL Bloustine, Plaintiff complained that it was unfair for her to get a letter in her file. (DE 74 ¶ 17). Plaintiff did not complain that she was being discriminated against because of race, color, religion, sex or national origin. In fact, Dr. Sanford had told all of the clinic technicians they would receive a letter. (DE 74 ¶¶ 9-10). Thus, the meeting with COL Bloustine was not a protected activity.

Plaintiff argues *Crawford* to show that the meeting with COL Bloustine was protected activity. (DE 72, p. 20). However, in *Crawford*, the Supreme Court held that not only reporting discrimination on one's own initiative, but also reporting discrimination by responding to

someone's questions falls under the opposition clause. *Crawford v. Metro. Gov't of Nashville*, 129 S.Ct. 846, 851 (2009). *Crawford* is irrelevant to a finding that the meeting with COL Bloustine is not protected because the Plaintiff did not allege discrimination because of race, color, religion, sex or national origin in the meeting.

Plaintiff did participate in protected activity on May 5, 2004, when she went with Ms. Smith to the EEO office at Fort Campbell and provided a statement in support of Ms. Smith (DE 74 ¶¶ 31-32). Four of the five alleged acts of retaliation occurred after this protected activity. However, Plaintiff still does not satisfy the 2nd and 4th elements of a *prima facie* case of retaliation, which are that the defendant knew of this exercise of her protected rights and that there is a casual connection between the protected activity and the adverse employment action. *Strouss*. 250 F.3d at 342. Plaintiff does not state that Defendants knew of this protected activity at the time of the alleged incidents of retaliation. Plaintiff only states that Nixon received notice that Plaintiff was going to be a witness in Ms. Smith's EEO charge, but does not state an exact date of this incident. It appears that it was shortly before Plaintiff contacted an EEO counselor on May 9, 2005, which occurred after all of the alleged incidents of retaliation. (DE 72, p. 9). Also, there is no connection between the protected activity and the alleged retaliation as the Plaintiff states the retaliation was due to her meeting with COL Bloustine. (DE 60-2 ¶ 35; DE 60-4, p. 23, lines 4-9 ).[2]

## IV. CONCLUSION

---

[2] While the Magistrate Judge does not find unlawful retaliation, it must be noted that the actions of Ms. Johnson are inappropriate and indeed juvenile. Likewise the action of placing a reprimand in everyone's file shows extremely poor judgement. It can only be hoped the higher authority at the hospital has taken appropriate action to correct the unfortunate practices that led to this litigation.

For the reasons stated above, the Magistrate Judge **recommends** that the Defendant's motion for summary judgment (DE 59) be **granted** and that this case be dismissed with prejudice.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party will have ten(10) days from receipt of any objections filed regarding this report to file a response to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this 5 day of August, 2009

Joe B. Brown
United States Magistrate Judge